[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court as a limited contested dissolution of marriage. The parties have hereinbefore stipulated on the record as to custody and visitation and those orders were made at the time they were agreed on. This memorandum of decision does not address those issues since they are resolved.
The parties were married in Brooklyn, New York on November 8, 1975. The wife's maiden name was Karen Lillie. The court finds it has jurisdiction in that the parties have resided in Connecticut continuously for one year prior to the date of the complaint. The court having heard the evidence, finds that the marriage has broken down irretrievably. The parties have three minor children, Jordan Elizabeth, born December 16, 1985; Alexandra Jaclyn, born September 7, 1982 and Brooke Lauren, born January 22, 1981. No other minor children have been born to the wife since the date of the marriage. The court further finds that the State of Connecticut has not provided support to either of the parties. The husband was born on October 1, 1949 and the wife was born on December 7, 1945.
The court has taken judicial notice as requested by the husband of20-93 of the General Statutes and the administrative regulations of the Department of Health Services beginning at 20-90-45 and, particular 20-90-52f. All of which concern nurses and nursing.
The parties both agree that the wife's computation of child support guidelines is accurate as it relates to the computation showing the payment by the husband to be $615 per week as child support. The husband agrees with the basis of that computation. That computation shows, however, a projection out at the same percentage rate to show an additional computation of $817 per week which the husband disputes.
The wife was a secretary before she was married and has not worked since the birth of her first child Brooke in 1981. Her job since the birth of the children has been to take care of the CT Page 11616 family. In particular, she took care of the children and the financial aspects of the marriage. She was the one responsible for bill paying and keeping the accounts of the family in order as well as raising the children. The thumbnail sketch provided of each of the children indicates that both of the parties have done an excellent job to date in rearing three wonderful but different children.
All of the children and the parties apparently nave substantial allergy problems and this has led to extraordinary medical bills on a regular basis. The wife's computation of unreimbursed medical bills for 1992 indicated that it was in excess of $10,000 for herself and the three children — primarily allergy medications.
The wife has decided that she would like to have a career in nursing. She apparently is doing very well at Norwalk Community College in the associates degree program. It is a two year program. She loves the work and apparently the work loves her. She started in September 1990 and she anticipates that she will complete this in May or June of 1994. She has testified that she cannot get a job during that time because of the requirements of the program as well as her child rearing responsibilities.
She has indicated that because of her age (46), and the time that it would take to finish her associates degree in nursing, that she felt it is necessary for her to get a B.S. degree in nursing. This means further time at a four year school, such as Sacred Heart, Fairfield University or the University of Connecticut. She is unable to predict the timetable as to when she would receive her B.S. She has indicated that she would not be able to accurately estimate when she would finish that B.S. program since so many things were uncertain. It was clear from her testimony that when she receives the associate degree, she does not intend to go to work as a nurse but rather to go on to the bachelor of science program.
The central dispute between these parties as to the length of the alimony payments is the question of whether or not in fact, she should begin work when she gets her associates degree or should she continue on for the bachelor of science degree in nursing.
The husband graduated from C.C.N.Y. in 1971 with a bachelor of arts degree. He is a creative person. He has had substantial work experience and has earned substantial monies over the years. He CT Page 11617 worked for McCann-Erickson and other prestigious companies and presently works for Circle Fine Art where he has been since November 1988 and he is presently a Vice President.
His income as shown on his tax return being Exhibit 1 for 1988 shows the income of $181,961. His income tax return Exhibit 2, for 1989 shows income of $165,526. His income tax return Exhibit 3, for 1990 shows income of $210,872. His income tax return Exhibit 4 for 1991 shows income of $189,897.
The husband's salary was cut in 1992 by 20% as shown on Exhibit A and Exhibit B. The company is apparently not doing very well based on his testimony and Exhibit 5. This of course can be addressed at a later date by a Motion for Modification if for some reason the husband's employment is terminated. This court therefore is not going to try the issue of the viability of the company but rather is dealing with those facts that are presently in existence.
In addition to the $133,000 which he will earn this year as gross income, he has made from his consulting and free lance work the sum of $38,000 which consists of a $28,000 fee for a sales film for Coca Cola and another $10,000 from Coca Cola for some creative concepts. He has described those as a once-in-a-lifetime opportunity. The court notes however, that his tax returns show other free lance work over the years. Accordingly, the court finds his gross income for 1992 both actual and projected, to be $171,000.
The parties have not been able to address their problems of the personal property between them, since it appears their styles of negotiating are dramatically different and have not led to effective conversations. The parties have agreed, however, to attempt to resolve the personal property and the court therefore will make no orders on the personal property. The parties have further agreed on the record that they would refer this matter to the Family Relations Office for binding mediation/arbitration. The court has received the intake sheet from the Family Relations Office indicating that they have taken it on that basis and, accordingly, it is referred to Family Relations for binding mediation/evaluation/arbitration by agreement of the parties. This court is aware, that it cannot delegate to Family Relations ultimate responsibility for personal property without the consent of the parties. CT Page 11618
The parties paint a different picture of the reasons for the breakdown in the marriage, but it is clear to this court that the marriage has broken down irretrievably without allocation of fault on one party or the other. The wife was candid in her testimony indicating that she believes that both parties were at fault 50% each and that it broke down on incompatibility.
Both of the parties health is not good based on their allergies. The wife's health problem seems to under control with her shots. The husband has had some recent problems concerning his throat and infections. To date, this has not interfered with his ability to work on a regular basis and earn.
It is clear to this court that the parties basically agreed that the husband would be the income producer and the wife would raise the children and take care of the finances of the family.
The court has listened to the witnesses and reviewed all the Exhibits in the case. In addition, the court has taken into consideration all of the relevant statutory criteria including, but not limited to 46b-81 the Assignment of Property and Transfer of Title Statute; 46b-82, the Alimony Statute; 46b-84, the Child Support Statute and the child support guidelines. In addition, the court has taken into consideration 46b-62, the Attorney's Fees Statute. In addition, the court has taken into consideration the financial affidavits of the parties, the arguments of counsel, the claims for relief, the statutes previously referred to, the child support guideline computations and the tax analysis provided by the wife's attorney and the claims for relief. Accordingly, the court orders as follows:
1. The court grants a dissolution of marriage on the grounds of irretrievable breakdown.
2. The child custody and visitation orders as previously set forth on the record are made orders of the court.
3. The wife shall have exclusive use and possession of the marital home until the youngest child graduates from high school at which time the house shall be sold and the net proceeds divided equally. The wife shall be responsible for the payment of the existing mortgage on a monthly basis and for all other costs of occupancy, except for major repairs and replacement as hereinafter defined. The wife may at her option, sell the premises in advance of the youngest child graduating from high school at her sole CT Page 11619 option.
During the time of ownership of the premises as tenants in common, the parties shall share equally, the cost of any major repair or replacement related to the occupancy of the premises costing in excess of $500 and the wife shall provide the husband with documentation supporting both the need for such repair or replacement and its costs. The husband shall make his one-half payment within thirty days of submission of the bill.
The net proceeds that are to be divided equally are defined as the proceeds received after the payment of the then existing mortgage balance, real estate broker commission, attorney's fees and other costs of sale, all of which are to be deducted from the gross sales price in order to determine the net proceeds.
4. As to alimony and child support, the court has considered the arguments of the parties and both of the parties have requested an unallocated order of alimony and child support as one of their proposals. The court will accept their request both as set forth in their claims for relief and in their oral argument. The court orders as unallocated alimony and child support during the lifetime of the husband and until the death or remarriage of the wife or the cohabitation of the wife under the statute, the annual sum of $77,000 per year payable $6,416.60 per month on the first of the month. Said unallocated order to be paid for a maximum period of eight and one-half years from the date of this decree.
The court has selected the period of eight and one-half years since that was the maximum time requested by the wife's attorney. The court finds that the plans for the wife to reshape her career, requires extensive time in order for her to continue the course obligations and her role as a mother.
At the end of the eight and one-half year period the alimony shall be reduced to $1.00 per year until the youngest child is age eighteen. That dollar per year shall be modifiable only if the wife is unable to work for reasons beyond her control.
Child support, on the termination of the alimony for any reason, shall be paid. The court makes no decision as to what amount of child support should be paid during that period of time that the alimony has terminated and leaves it to the parties to first attempt to negotiate it between themselves. If they are unable to do that, they are ordered to go to the Family Relations CT Page 11620 Office for mediation in order to resolve the child support. Failing in that mediation, they may return to the court for judicial review.
5. The husband shall maintain medical and dental insurance for the children substantially equal to that now in effect. The wife shall pay 2/3 of unreimbursed medical expenses for the children and the husband pay 1/3 provided that he shall be consulted in advance and give his approval to any single non-emergency course of treatment necessitating the unreimbursed expenditure of more than $500.00. Said approval not to be unreasonably withheld.
6. The husband shall maintain disability and life insurance in amounts currently in effect for so long as he has an obligation to provide alimony and/or child support. The amount of life insurance that he shall carry shall be $400,000 payable for the benefit of the wife until he stops paying her alimony and then it shall be paid for the benefit of the children until they reach the age of eighteen. This order is based on the representation that he had $600,000 of insurance in oral argument although, the financial affidavit does not show insurance. It was represented that this insurance was available.
7. The personal property has been previously addressed in the body of the opinion.
8. The husband shall provide by Qualified Domestic Relations Order (QDRO), for the equal division of his 401K Plan with his current employer — Circle Fine Arts and of his Pension Plan with his former employer — Interpublic. Each division to be based on the value of the respective plans as of the date of this decree of dissolution. The husband's attorney shall be responsible for preparation of the QDRO to the satisfaction of the plan administrators in accordance with this court order. This court retains jurisdiction over this matter to enforce this provision.
9. Any tax refunds received by the parties shall be shared 2/3 to the husband and 1/3 to the wife as received.
10. The wife shall be paid by the husband the sum of $1,200 in respect to the charges made by him on the wife's credit card and that payment shall be made in three equal payments of $400 per month commencing the first full month after the rendition of this decision on the 1st day of that month. The husband shall hold the CT Page 11621 wife harmless from any liability on the City Bank Account or any other credit card held by him. The husband shall use his best efforts to remove his wife's name from all accounts as soon as possible. The court recognizes that in some cases that may not be possible, but he is ordered to use his best efforts to do that.
11. Based on all of the considerations above and the division of property, the court orders neither of the parties to pay the other's attorney's fees and orders them to be responsible for their own attorney's fees.
12. The Circle Fine Arts stock presently in joint names shall become the sole and exclusive property of the husband. The wife shall do all that is necessary to transfer her interest to the husband in that stock.
13. The wife shall maintain and keep the 1986 Chevy Astro Van (there has been some question as to whether it's a 1987 Chevy Astro Van), the husband shall keep the 1989 Mazda and shall be responsible for the debt thereon.
14. Each of the parties shall keep their own personal checking and savings accounts free and clear of the claim of the other.
15. All other claims for relief by the parties not expressly addressed herein have been rejected by the court.
KARAZIN, J.